UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHER WADIE SOLIMAN,<br>Plaintiff,<br>v.<br>KILOLO KIJAKAZI, et al.,<br>Defendants. | Case No. 23-cv-03668-HSG<br>**ORDER DENYING PLAINTIFF'S MOTION AND ENTERING JUDGMENT IN DEFENDANT'S FAVOR**<br>Re: Dkt. No. 1 |

Defendant Kilolo Kijakazi, the former Commissioner of the Social Security Administration, acting in his official capacity, partially denied Plaintiff Maher Soliman's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff asks the Court to reverse that decision and grant his benefits. Dkt. No. 1. The Court **DENIES** the motion.

I.   **BACKGROUND**

From 2003 to 2012, Plaintiff worked as a legal advisor and prosecutor for the U.S. Departments of State and Defense traveling between the United States and Iraq, until he was diagnosed with chronic obstructive pulmonary disorder (COPD) in January 2012. *See* Dkt. No. 11 ("AR") at 77.[1] In September 2017, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of January 6, 2012, and listing COPD as his impairment. *See id.* at 106. The Agency denied Plaintiff's application initially in March 2018, and on reconsideration in October 2018. *Id*. at 125, 92.

Plaintiff appeared before an Administrative Law Judge ("ALJ") in February 2020. AR at 32–68. The ALJ followed the five-step sequential evaluation process mandated for disability

---

[1] Due to its size, the Administrative Record, filed as Dkt. No. 12, is broken into several parts. The Court refers to these documents collectively as the "AR," and cites to its internal pagination.

claims under 20 C.F.R. § 404.1520(a).  Step One requires the ALJ to determine whether the claimant is working in "substantial gainful activity," defined as work done for pay or profit and involving significant mental or physical activities.  *See* 20 C.F.R. §§ 404.1520(b), 404.1572.  Step Two directs the ALJ to determine whether the claimant has a severe impairment that significantly limits his ability to work.  *See* 20 C.F.R. § 404.1520(c).  At Step Three, the ALJ determines whether the claimant's impairment medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P, Appendix 1.  At Step Four, if the claimant does not have a listed impairment, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv), (e), (f); *see also id.* § 404.1545.  Step Four's threshold inquiry is whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms.  *See Id.* § 404.1529; Social Security Ruling 16-3p.  Finally, at Step Five, if the claimant does not have the ability to perform past relevant work, the ALJ determines whether the claimant can adjust to other work based on their age, education, work experience, and RFC.  20 C.F.R. § 404.1520(a)(4)(v).

Here, the ALJ issued a partially favorable decision in Plaintiff's case in March 2020.  AR at 155.  The ALJ found that there was no record of Plaintiff having a medically determinable impairment prior to July 23, 2017, and therefore concluded that Plaintiff was not disabled during that period.  *Id.* at 161.  But the ALJ did find that Plaintiff's COPD became severe on July 23, 2017, and that because he was unable to perform any past relevant work thereafter, he became disabled on that date.  *Id.* at 165.  Having found that Plaintiff was not disabled through December 31, 2014, the ALJ denied Plaintiff's application for a period of disability and disability insurance.[2]

Plaintiff appealed the decision, and the Office of Disability Adjudication and Review Appeals Council ("Appeals Council") remanded the case back to an ALJ to resolve several issues.  AR at 174.  The Appeals Council determined that the first ALJ failed to consider a January 2012 medical diagnosis by Dr. Weishen Griggs, which found that Plaintiff was unfit for deployment to

---

[2] The ALJ determined Plaintiff remained insured through December 31, 2014, meaning Plaintiff must have had to establish disability on or before that date.  *See* AR at 159.

1    Iraq due to his COPD. *Id.* The Appeals Council also found that the ALJ had failed to sufficiently
2    evaluate Plaintiff's past relevant work in determining that he had been unable to perform it since
3    July 23, 2017. *Id.* Finally, the Appeals Council concluded that the ALJ's analysis of Plaintiff's
4    residual functional capacity did not consider any environmental limitations related to his COPD,
5    despite finding that COPD is a severe impairment. *Id.* at 175. Given these issues, the Appeals
6    Council "vacate[d] the entire hearing decision" by the first ALJ and remanded the case back to
7    another ALJ with instructions to: further consider whether Plaintiff's COPD prior to July 23,
8    2017, was a medically determinable impairment; give further consideration to Plaintiff's residual
9    functional capacity; obtain evidence from a medical expert about the nature and severity of the
10   Plaintiff's functional limitations; and, if warranted by the expanded record, give further
11   consideration to whether Plaintiff had acquired any transferrable skills. *Id.* at 17, 175.

12   Plaintiff appeared before a second ALJ in April 2022. AR at 69–104. The second ALJ
13   similarly followed the five-step sequential evaluation process, focusing on the period between the
14   alleged January 2012 onset date and July 23, 2017 ("the relevant period"), as instructed by the
15   Appeals Council and based on Plaintiff's appeal of the unfavorable portion of the prior decision.
16   *See id.* at 23, 90. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful
17   activity since the alleged onset date. *Id.* at 19. At Step Two, unlike the first ALJ, the second ALJ
18   found that Plaintiff had a suffered from the severe impairments of COPD and nicotine dependence
19   since the onset date. *Id.* And at Step Three, the ALJ found that Plaintiff's impairments during the
20   relevant period did not meet or medically equal the criteria of any listing. *Id.* at 20.

21   The ALJ then advanced to Step Four to assess Plaintiff's residual functional capacity and
22   his ability to perform past relevant work. At the hearing, Plaintiff stated that when he was
23   diagnosed with COPD in January 2012, he was in poor health and was unable to work because he
24   could not walk more than a block due to his COPD. AR at 20, 91. But the ALJ ultimately
25   determined that while Plaintiff's COPD reasonably could be expected to cause his symptoms, his
26   statements concerning the intensity, persistence, and limiting effects of these symptoms were not
27   fully supported prior to July 23, 2017. *Id.* at 20. Instead, and consistent with the first ALJ's
28   finding, the second ALJ found that prior to July 23, 2017, Plaintiff had the RFC to perform light

work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that he could stand or walk for only 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.[3] *Id.* Plaintiff also had to avoid exposure to extreme heat and cold and pulmonary irritants. *Id.* On that basis, the ALJ found that during the relevant period, Plaintiff was capable of performing his past relevant work as a lawyer, which a vocational expert testified was sedentary, skilled work that could be performed at the "light" level within Plaintiff's RFC. *Id.* at 22–23. Accordingly, the ALJ concluded that Plaintiff was not disabled prior to July 23, 2017, because he could have performed past relevant work during that time. *Id.* at 24.

However, the second ALJ did not disturb the first ALJ's finding that Plaintiff was unable to perform his past relevant work beginning on July 23, 2017. AR at 23. Further, at Step Five, the ALJ found that Plaintiff did not have any transferable skills and could not adjust to other work, also relying on the testimony of the vocational expert. *Id.* The ALJ thus determined that Plaintiff became disabled on July 23, 2017, and continued to be disabled through the date of the decision. *Id.* at 24.

Plaintiff requested review of the second ALJ decision. AR at 4. The Appeals Council granted the request for review, and also stated that it would consider an additional statement of law and facts and additional evidence from Plaintiff. *Id.* In response, Plaintiff submitted a letter brief, a reply brief to the Appeals Council's tentative decision, and three exhibits: 1) an article from 2022 describing how sandstorms in Iraq had caused individuals to suffer respiratory illness, 2) an article from Healthline.com titled, "Is COPD Considered a Disability?," and 3) a letter brief describing the differences between the Iraqi and American legal systems. *Id.* at 661–91. The Appeals Council ultimately adopted the ALJ's findings and found that Plaintiff's additional statements and evidence did not provide a basis for reversing the underlying decision. *Id.* at 4. Plaintiff then filed this action *pro se* under 42 U.S.C. § 405(g).

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

## II. STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial evidence or is based on legal error. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The threshold for "substantial evidence" is not high: "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "The evidence must be more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the [Commissioner's] decision, the [Commissioner's] conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless. The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (quotation omitted).

Judicial review is limited to the Commissioner's "final decision." 42 U.S.C. § 405(g). Here, although Plaintiff challenges the ALJ's findings, the Appeals Council's decision after granting review, rather than the ALJ's decision, is the Commissioner's final decision in this case. *See* 20 C.F.R. §§ 404.955, 404.979, 404.981; *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). However, the Court will treat the underlying ALJ decision as the decision of the Appeals Council where the Appeals Council adopted the ALJ's findings and did not itself evaluate or

5

1    discuss the evidence or make additional findings. *See, e.g.*, *Jenkins v. Astrue*, 628 F. Supp. 2d

2    1140, 1144 (C.D. Cal. 2009). Further, a district court must consider any new evidence that the

3    Appeals Council considered in reviewing the decision of the ALJ. *See Brewes v. Comm'r of Soc.*

4    *Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

**III.   DISCUSSION**

Plaintiff's opening brief argues that the ALJ's ruling should be reversed because COPD meets or is equal to a listed impairment, and because the ALJ was bound by a prior ruling. Dkt. No. 1 ("Mot.") at 5.[4] In opposition, Defendant argues that the ALJ reasonably determined that there was no evidence in the record indicating any pulmonary testing results that met the listing requirements. Dkt. No. 19 ("Opp.") at 2. Defendant also contends that the ALJ was not bound by any prior ruling, and even if it was, the ALJ in 2020 reached the same conclusion as the ALJ in 2022: that Plaintiff became disabled on July 23, 2017, but not before. *Id.* at 3.

On reply, Plaintiff does not respond to Defendant's arguments, but instead raises two new issues. First, he asserts that the ALJ failed to make a specific finding concerning his transferable skills. Dkt. No. 20 ("Reply") at 1. Second, he argues that the ALJ impermissibly discounted and disregarded a treating physician's medical opinion. *Id.* Ordinarily, the Court is not required to consider arguments raised for the first time in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). However, given that Plaintiff is pro se, the Court will address all of his arguments.

**A.   Listing Requirements**

First, Plaintiff argues that the ALJ's decision should be reversed because "COPD meets or equals the criteria of respiratory impairments listed in the 'Listing of Impairments.'" Mot. at 4.

Listing 3.02 applies to chronic respiratory disorders like COPD. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.02(a) (Listing 3.02). "A claimant may meet Listing 3.02 in four different ways: 1) A forced expiratory volume in the first second of a forced expiratory maneuver

---

[4] As the Court previously held, it construes Plaintiff's Memorandum of Points and Authorities attached to his original complaint, Dkt. No. 1, as his required "brief for the requested relief." *See* Dkt. No. 18 at 17.

6

value ('FEV1') at or below the listing level based on age, gender, and height under 3.02A; or 2) a forced vital capacity value ('FVC') at or below the listing level for age, gender, and height under 3.02B; or 3) a chronic impairment of gas exchange demonstrated by a diffusing capacity of the lungs for carbon monoxide value ('DLCO') or other tests under 3.02C; or 4) exacerbations or complications requiring hospitalizations under 3.02D." *James S. v. Saul*, No. 4:20-CV-00027-TMB, 2021 WL 1587903, at *13 (D. Alaska Apr. 22, 2021). An impairment is medically equivalent to a listed impairment if the record contains "findings related to the impairment that are at least of equal medical significance to the required criteria." *See* 20 C.F. R § 404.1526.

Here, the ALJ found that the there was no evidence in the record "to support a finding that [Plaintiff's] impairments [met] or medically equal[ed] any applicable listing." AR at 20. Specifically, the ALJ stated that the record did not contain "pulmonary testing results that meet the requirements described in Listings 3.02 or 3.03 regarding the claimant's COPD." *Id.* The Appeals Council adopted this finding without its own analysis. *Id.* at 4. Accordingly, the Court will treat the ALJ's finding as the decision of the Appeals Council.

The Court agrees with Defendant that Plaintiff's argument is cursory and unpersuasive, as he fails to point to a specific test result or any other evidence in the record to support his general assertion that "COPD meets or equals" the listing requirements. *See* Opp. at 2. Moreover, the Court finds that ALJ's finding was not unreasonable based on the record evidence.[5]

At Plaintiff's hearing, Dr. Mark Farber, a medical expert with a specialization in pulmonary diseases, testified that the record did not contain test results of pulmonary functions taken during the relevant period that would show a listing-level finding or medical equivalent. *See* AR at 85–86. The only medical reports in the record containing information related to Plaintiff's respiratory functioning during the relevant period included a chest x-ray from 2010 and a diagnosis in 2012 that Plaintiff could not be deployed to Iraq due to exacerbation of his COPD. The chest x-ray showed a nodular density over Plaintiff's right lung, but there are no records of

---

[5] The ALJ was not required to articulate specific evidence supporting the finding that Plaintiff's impairment did not meet the medical equivalent of Listing 3.02 because the ALJ articulated reasons why Plaintiff was or was not disabled at a later step. *See* Soc. Sec. Ruling 17-2P.

any pulmonary function test accompanying the x-ray. *Id.* at 1062. In addition, notwithstanding the x-ray results, Plaintiff was cleared to deploy at that time. *Id.* at 1063. Similarly, the 2012 diagnosis of exacerbated COPD was not accompanied by any spirometry or blood testing showing a specific level of pulmonary impairment, and did not include any specific information about Plaintiff's condition or its limitations on his daily functioning. *See id.* at 1065. On the other hand, the record also shows that Plaintiff had a normal chest x-ray in 2014 and normal respiratory examinations in 2013 and 2016. *See id.* at 803, 102, 109. The Court finds that, based on this evidence, and given Plaintiff's failure to identify any evidence to the contrary, it was reasonable for the Appeals Council to adopt the ALJ's finding that Plaintiff's COPD did not meet or medically equal any applicable listing. *Cf. James S.*, 2021 WL 1587903, at *15–16 (finding that ALJ did not adequately consider evidence of medical equivalence in the record, including multiple medical opinions stating that the claimant had impaired pulmonary functioning and would have met the listing requirement).

### B. Res Judicata

Plaintiff next argues that it is "at issue" in his case whether a prior decision by the ALJ or Appeals Council decision should apply in some way to the final decision Plaintiff is challenging here. *See* Mot. at 4. Plaintiff cites *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), which held that the final decision of a first administrative law judge "concerning [a] claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." *Id.* at 694. Plaintiff argues that this case is "right on point" to the facts here, but does not describe how or why, or even identify any prior final finding that allegedly should have applied to the Appeals Council decision at issue. *See* Mot. at 7.

The Court notes that although Plaintiff is pro se, the Court "may not supply essential elements" of his argument for him. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). But even construing Plaintiff's brief as liberally as possible, there is no basis to reverse the decision of the Appeals Council on res judicata grounds.

Considering the record, the Court surmises that Plaintiff may be referring to the first ALJ's finding that the demands of his past relevant work as a lawyer exceeded his residual functional

capacity to perform light work. *See* AR at 164. Plaintiff may intend to argue that this decision should have been controlling over the later contrary decisions by the second ALJ and Appeals Council. *Compare id.* at 164 *with id.* at 6, 23. But only a "final and binding" decision of the Commissioner has preclusive effect. *See Chavez*, 844 F.2d at 692; 20 C.F.R. § 404.905. The first ALJ decision was not final and binding because it was appealed by Plaintiff, then vacated in its entirety by the Appeals Council. *See* AR at 174. Moreover, it appears that deference to prior findings actually helped Plaintiff, as the second ALJ relied on the *favorable* findings of the first to adopt the determination that Defendant became disabled on July 23, 2017. *See id.* at 24. And while the second ALJ reached the same conclusion as the first that Plaintiff was not disabled prior to July 23, 2017, the ALJ's conclusion relied on independent factual findings and analysis, not any application of res judicata. *See id.* at 19–23. In sum, Plaintiff fails to show that the ALJ or the Appeals Council committed legal error by failing to correctly apply res judicata principles in this case.

### C. Transferable Skills

On reply, Plaintiff argues that the ALJ failed to follow a Social Security Ruling, SSR 82-41, by "assum[ing] that Plaintiff possessed transferable skills without making specific findings in support of this assumption." Reply at 3. SSR 82-41 states that "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." Soc. Sec. Ruling 82-41. But Plaintiff does not explain how this rule applies to the ALJ decision he is appealing. "Transferable skills" are at issue in the last step of the evaluation process, after it has been determined that a claimant was not able to perform their past relevant work.[6] Here, the ALJ's only finding as to Plaintiff's "transferable skills" was that he did not possess any, and on that basis the ALJ concluded that Plaintiff became disabled on July 23, 2017. *See* AR at 23. The Appeals Council adopted this finding. *Id.* at 8. Accordingly, SSR 82-

---

[6] *See* Soc. Sec. Ruling 82-41 ("Claims which require consideration of an applicant's ability to adjust to other work are addressed in the last step of the sequential evaluation process as it is explained in the regulations.").

9

1    41, which requires an ALJ to cite certain facts if transferable skills are found, is not relevant to the

2    Appeals Council's decision.  However, based on the record, the Court understands that rather than

3    objecting to the ALJ's "transferable skills" finding, Plaintiff more likely is seeking review of the

4    Appeals Council's and ALJ's findings that during the relevant period, Plaintiff was able to

5    perform his past relevant work as a lawyer, even though he had performed such work in Iraq and

6    not the U.S.  *Id.* at 6, 22–23.

7          At the second ALJ hearing, Plaintiff argued that his work in Iraq and legal education was

8    not "transferable" to the practice of law in America.  *See* AR at 20–21.  Specifically, Plaintiff

9    testified that once he could no longer work as a lawyer in Iraq for the State Department due to his

10   COPD, he was "not a lawyer" because an equivalent to his job in Iraq "did not exist" in the United

11   States.  *Id.* at 81, 82.  Further, he argued that because he attended an unaccredited American law

12   school and had not passed the bar, he could not work as a lawyer in the U.S., and therefore could

13   not perform his past relevant work as a lawyer after 2012.  *Id.* at 97.  In essence, as the ALJ

14   described, Plaintiff argued that "his past work [did] not qualify as past relevant work as defined by

15   the SSA."  *Id.* at 23.  Plaintiff made a similar argument to the Appeals Council, asserting that "the

16   ALJ failed to recognize that [his] law degree is non-accredited and his prior work in Iraq

17   practicing Sharia/Mid-Eastern law is not compatible with Anglo American Standard Common

18   Law and is therefore not transferable."  *Id.* at 670; *see also id.* at 688 (arguing that Plaintiff "has

19   no past relevant work or skills that would be transferable").

20         The Appeals Council rejected this argument, finding that "if a claimant can meet the

21   physical and mental requirements of a past job, it is immaterial whether the claimant no longer

22   resides in the country where that past work was performed."  AR at 6.  To support its conclusion,

23   the Appeals Council cited SSR 82-40 and the Social Security Program Operations Manual.  *Id.*

24         The Court agrees with the Appeals Council's interpretation of the regulations and agency

25   guidance.  Social Security Rulings do not have the force of law, but the Court defers to them

26   "unless they are plainly erroneous or inconsistent" with the Social Security Act or regulations.

27

28

*Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).[7]  SSR 82-40 clarifies that "[a] job in a foreign economy need not have a counterpart in the U.S. economy" to be considered past relevant work.  *See* Soc. Sec. Ruling 82-40.  Put another way, for purposes of the five-step analysis, the relevance of past work in a foreign country is "no different from" the relevance of past work in the U.S.  *Id.*  This is because past relevant work is evaluated to determine whether a social security claimant is "functionally capable" of performing the mental and physical requirements of a particular past job, not whether they actually can perform that exact same job again.  *See id.*  The Ninth Circuit has held that SSR 82-40 is not inconsistent with the Social Security Act or applicable regulations.  *See Quang Van Han*, 882 F.2d at 1457.

Similarly, the Operations Manual explains that the evaluation of past relevant work does not consider whether a claimant "meets the qualifications for licensure to do [past relevant work]."  *See* POMS DI 25005.001C.  If a claimant alleges that they have a medical reason that prevents them from meeting licensure requirements, the only relevant question is whether the claimed medical impairment limits their functional capacity.  *Id.*

Applying this guidance here, Plaintiff's lack of the required accreditation or licensure to work as a lawyer in the U.S. is not material to the evaluation of Plaintiff's past relevant work.  Instead, the proper inquiry is whether, during the relevant period, Plaintiff could have functionally performed the physical and mental duties of his past job as a lawyer in Iraq.  *See Quang Van Han*, 882 F.2d at 1457–58 ("If the claimant is in sufficient physical and mental condition to perform his previous work, his impairment is clearly not so severe as to preclude employment.  This should hold true no matter where his previous work took place, unless it can be shown that employment in a foreign country is less taxing than work in the United States.").  Accordingly, the Court finds that the Appeals Council's reliance on SSR 82-40 and its determination that Plaintiff's job as a

---

[7] The Court notes that there may be a question as to whether this rule mandating deference to Social Security Rulings survives *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).  But the Ninth Circuit has explained that only in cases of "clear irreconcilability" can district courts "consider themselves bound by the intervening higher authority and reject the prior opinion of [the Ninth Circuit] as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).  Here, the Court certainly cannot conclude that *Loper Bright* clearly abrogated controlling Ninth Circuit authority.

lawyer in Iraq qualified as "past relevant work" for SSA purposes was not legal error.

Further, it was reasonable for the ALJ to find, and the Appeals Council to affirm, that Plaintiff could have performed his past relevant work as a lawyer prior to July 23, 2017, because he had the RFC to perform light, sedentary work during that time. AR at 6, 23. Plaintiff testified that he obtained a juris doctorate from an unaccredited law school in the U.S., and that when he worked as a lawyer for the State Department in Iraq prior to 2012, he engaged in both investigative work and prosecution, and he was responsible for factfinding as well as evaluating and presenting evidence. *See id.* at 77–80. Based on this testimony, the vocational expert concluded that Plaintiff had past relevant work as a lawyer, which the Dictionary of Occupational Titles (DOT) classifies as sedentary, skilled, and light work. *Id.* at 23. Given the ALJ's prior determination that Plaintiff had the RFC to perform such work during the relevant period, the ALJ thus concluded that Plaintiff was capable of performing his past relevant work as a lawyer. *Id.* at 22. This conclusion was not unreasonable. As the ALJ explained to Plaintiff at the hearing, the past relevant work analysis focuses on "job duties and responsibilities." *See id.* at 97. Given Plaintiff's testimony that he conducted factual investigations and performed legal analysis as a lawyer in Iraq, it was plausible for the ALJ to conclude that if Plaintiff had the necessary mental and physical capacity to perform such work during the relevant period, he could have performed similar work in the U.S. even without an accreditation or bar license, in non-lawyer roles such as a paralegal or legal secretary. *See id.* at 98.

Finally, the Courts finds that the Appeals Council reasonably concluded that Plaintiff's additional evidence submitted on appeal was not persuasive. AR at 4. Plaintiff's submission explained that a lawyer's role in the Iraqi legal system is more "administrative" than the equivalent role in the American system. *Id.* at 686. But Plaintiff nonetheless confirmed that lawyers in Iraq still "review the case file for completeness" and "provide recommendations to . . . judges." *Id.* These facts do not show how Plaintiff's previous work as a lawyer in Iraq was "less physically or mentally grueling than sedentary work in the United States." *See Quang Van Han*, 882 F.2d at 1458.

**D.     Treating Physician Testimony**

Lastly, Plaintiff argues that the ALJ "ignored" Dr. Weishen Griggs' August 30, 2010, report and January 6, 2012, diagnosis.  Reply at 6.  Plaintiff contends that the ALJ "failed to provide specific and legitimate reasons for assigning little weight to Dr. Grigg's opinion."  *See id.* at 8.  The 2010 report was a chest x-ray showing a 6-millimeter nodular shadow over Plaintiff's right lung.  AR at 1062.  And the diagnosis in 2012 stated: "Civilian is unfit for deployment due to progression of COPD with exacerbation diagnosis.  Reject all further deployment."  *Id.* at 1066.

"Even under the new regulations, a [Commissioner] cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  In reviewing medical opinions, a [Commissioner] must "articulate . . . how persuasive" it finds "all of the medical opinions" based on several factors.  20 C.F.R. § 404.1520c(b).  The Commissioner must address the two most important factors: supportability and consistency.  *Id.*

Here, the Appeals Council directly addressed the 2012 diagnosis, and determined that the statement that Plaintiff was "unfit for deployment" in January 2012 "due to progression of COPD with exacerbation diagnosis" did not provide valuable or persuasive evidence of Plaintiff's specific work-related limitations.  AR at 5.  This conclusion is reasonable given that the diagnosis was limited to Plaintiff's fitness for deployment, did not prescribe how his COPD had progressed, and was not accompanied by any spirometry or blood testing showing a specific level of pulmonary impairment.  *See id.* at 1065.  The Appeals Council's conclusion is also supported by the opinion of Dr. Farber, the medical expert, who testified that Plaintiff's inability to return to Iraq in 2012 was likely due to the potential effect of the pollutants and poor air quality in Iraq on his COPD.  *Id.* at 88–89.  Additionally, it is consistent with Plaintiff's medical records during the relevant period.  Aside from the two pieces of evidence related to Dr. Griggs, the only other evidence of COPD-related tests that Plaintiff underwent during the relevant period showed normal results in 2013, 2014, and 2016.  *See id.* at 803, 102, 109.  Similarly, the record showed that Plaintiff sought medical treatment for unrelated issues several times throughout the relevant period, but did not mention experiencing pulmonary symptoms, and did not report being on any

1  medications for his COPD. *See id.* at 5. Accordingly, in light of the overall record, it was not
2  unreasonable for the Appeals Council to find that Dr. Griggs' diagnosis that Plaintiff could not be
3  deployed to Iraq because of his COPD was not valuable or persuasive evidence of his functional
4  capacity. *See id.*

The Appeals Council did not explicitly address the 2010 x-ray, so the Court will treat the ALJ's evaluation of the x-ray as the decision of the Appeals Council. The ALJ found that the x-ray did not indicate that Plaintiff was incapable of work activity prior to July 2017. *Id.* at 21. This finding also is supported by substantial evidence. As the ALJ explained, the x-ray, taken two years prior to Plaintiff's claimed onset date, did not include any pulmonary function test results. *Id.* at 21, 1062. And as discussed, this finding accords with the overall record, which did not contain any indication that Plaintiff's COPD rendered him incapable of performing any work activity prior to July 2017. As such, it was reasonable for the Appeals Council to adopt the ALJ's treatment of the 2010 x-ray. *Id.*

## IV.   CONCLUSION

The Court thus **DENIES** Plaintiff's motion to reverse the ALJ's decision and grant Plaintiff's benefits, Dkt. 1. The Court affirms the Commissioner's decisions below. The Clerk is directed to enter judgment in favor of Defendant and close the case. This Order terminates Dkt. No. 19.

**IT IS SO ORDERED.**

Dated: 3/31/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge